## Case No. 16,717.

UNITED STATES v. WILLIAMS et al.

[15 Int. Rev. Rec. 199.]

Circuit Court, S. D. Ohio. 1872.

WITNESSES—CRIMINATING QUESTIONS.

As under the act of congress approved February 25, 1868 [15 Stat. 37], the testimony offered by a witness can in no way be used ·against him, he is no longer privileged to refuse to answer.

[Cited in U. S. .v. McCarthy, 18 Fed. 89.]

[This was an action at law by the United States against A. P. Williams and others under the internal revenue laws.]

During the progress of the trial of the above named case before Hon. P. B. SWING, the plaintiff called Thomas R. Roberts, inspector of spirits during the year 1867, as a witness on its behalf and W. M. Bateman, district attorney, proceeded to question him as to the amount of spirits he had inspected at the plank-road distillery. The witness declined to answer because his answer would tend to criminate himself and M. A. Sayler, Esq., his attorney insisted upon his right to refuse to give answer and asked the court to so instruct him. District Attorney Bateman denied the existence of the privilege and insisted that the act of congress, approved February 25, 1868 (15 Stat. 37), abolished it.

The court took it under advisement, and at a subsequent day in the trial delivered the following opinion:

SWING, District Judge. The witness through his counsel claims, that by the law he is not compelled to answer any question which will have a tendency to expose him to a penal liability, or to any kind of punishment, or to a criminal charge, and that he may, by order of the court, be privileged from answering any such question. That such was the privilege of the witness at common law cannot be denied. While there exists a difference of opinion among judges and law writers as to the origin of the privilege, or the foundation and reason upon which it rests, they all agree that such privilege existed. Mr. Starkie says that the rule has its foundation in humanity and policy; in humanity, that no man should be compelled to give evidence which might be used to convict him; of policy, because no man should be placed in a position in which he would be under the strongest temptations to commit perjury. Let us see whether these reasons or either of them exist in this case. It is claimed, on behalf of the government, that the act of congress of the 25th of February, 1868 (15 Stat. 37), removes the reasons upon which the rule originally rested, and in which, indeed, it originated. If that be so, we can see no good reason for the existence of the rule. It is claimed, however, that it was evidently not intended by congress to compel the witness to testify; because the act is entitled "An act for the protection of certain persons making disclosures, or persons testifying as witnesses." I think congress, in the passage of this act, may have had in contemplation cases where parties might voluntarily make disclosures or give testimony; but if what the legislature has done completely protects the parties from the use of their disclosures, or the use of their testimony, we apprehend that that result cannot be controlled, because the enacting clause is entitled one for the protection of the witness.

The act reads: "No answer, or other pleading, of any party, and no discovery or evidence obtained by means of any judicial proceeding from any party or witness in this or in any foreign country, shall be given in evidence, or in any manner used against such party or witness." Now if it cannot be given in evidence, or if it cannot in any manner be used against a witness, where is the reason upon which his protection rests against the disclosure? It has no existence. It may be said that, although the answer or disclosure of a witness may not be used, yet, as has been argued, there may be incidental facts elucidated by the testimony which would put the prosecutor upon the track of the discovery of other testimony by which the facts could be proved, but the act says that it shall not be "in any manner" used against the party. This is a very broad and comprehensive expression. If the testimony or admission cannot be used by giving it directly in evidence to the jury as an admission, or if it cannot, in any manner, be used against the party, then it seems to me the great reason upon which the protection of the witness rests has ceased to exist; and it is a well settled principle, too old to be combated or denied, that where the reason of a law or rule ceases, the law or rule itself ceases also.

As to the other reason, that of public policy: If the party cannot be prosecuted, if the testimony cannot be used against the witness as laying the foundation for a prosecution, complaint, or information against him, he is freed from any inducement to commit perjury; for no proceeding based upon his admission or disclosures can be brought against him, and the testimony itself can in no manner be used against him in any criminal prosecution. From the reason of the law ceasing, it seems to me that the law fails with it. But I am not alone in my views in this respect. We have the authority of our writers upon the law of evidence. Mr. Greenleaf (volume 1, p. 501) says: "If for any cause the testimony cannot be used against the witness, he is not privileged." It is true that Mr. Greenleaf, in stating this rule, cites 24 N. Y. 83, and it is claimed by counsel for witness that that was upon a different statute from this. Admitting that it was so, if that statute compels the party to testify, it only indemnifies him so far that it provides that the testimony given in the case shall not be used against him, but does not indemnify against prosecution. But the judge does not rest his decision upon the compulsory provisions of the statute, but places it upon the broad principle that the reason of the privilege having ceased the party is no longer entitled to its protection, "for," says the learned judge, "if the case is so situated that a repetition of it (the

testimony or disclosure) on a prosecution against him is impossible, or where it is forbidden by a positive statute, I have seen no authority which holds or intimates that the witness is privileged." Not only have we the rule laid down by Mr. Greenleaf, but we have it as strongly stated by Mr. Taylor in his treatise on Evidence, whose work.is the highest authority in England and America, and justly commends itself to careful examination and consideration. On page 1265, vol. 2, the author says: "Or, if, in any other way, the reason for the privilege has ceased, the privilege itself will cease also, and the witness will be bound to answer."

In addition to the statement of this rule by this learned authority, we have the rule supplied by two district judges, in the construction of the statute now before us, and while, as has been well observed by counsel, these decisions are not binding upon us, and could not be followed if we supposed them wrong, yet when courts of equal jurisdiction with ours, or .even of inferior jurisdiction, .have been called upon to construe the statute before us, we will look to them as the utterances of men more or less learned in law, whose duty it was to examine the same questions to give it a proper construction. The first case is that of In re Phillips [Case No. 11,097]. In speaking of the statute, Judge Underwood says: "That being so, the respondent, by any answers he may give to the interrogatories, cannot thereby be subjected to a criminal prosecution, since his answers cannot be used against him. If it be said that, although his answers cannot themselves be used against him, they may nevertheless·point to other information not otherwise to be obtained, which, when obtained, may be used against him, it is to my mind, a sufficient reply to quote the court of appeals of New York. But neither the law nor the constitution is so sedulous to screen the guilty as the law supposes. If a man cannot give evidence upon the trial of another person without disclosing circumstances which will make his own guilt apparent, or at least capable of proof, though his account of the transaction should never be used as evidence, it is the misfortune of his condition, and not any want of· humanity in the law. The refusal, therefore,· of the respondent to answer the interrogatories is not sustained by any sufficient ground." The second case is that of U. S. v. Brown [Id. 14,671]. Judge Deady says: "By the act of February 25, 1868 (15 Stat. 37), it is provided that no evidence of a party obtained in a judicial proceeding shall be used against such party in any court of the United States, in any criminal proceeding, to enforce a forfeiture or penalty. As the law stood before the passage of this act, a witness could decline to answer a question when the answer would tend to criminate himself, but now he may be compelled to answer, when the inquiry is perti-nent to any judicial proceeding, because it may be necessary to the ends of justice as to others, and can not be used· against himself. If this is not the object and effect of the act, I confess I ·do not know what is."

This array of authorities in favor of the proposition that the witness is not privileged from answering, and no authorities having been produced which show that where, under the legislative act, the disclosures and testimony can in no manner be used against the witness to procure an information or indictment against him, nor upon the trial against him, I do not feel myself at liberty to give this statute any other construction than the one I have placed upon it. The reason of the privileges having ceased, the privilege itself cannot exist, and the witness will be compelled to answer.

The witness then proceeded to testify as to the fraudulent duplication of certificates and serial numbers in connection with the removal of spirits from the distillery.

After fourteen days of trial the jury rendered verdict against four of defendants for $300,000.